UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTINE DILLON, | ) | No. CV 09-7272-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 6, 2009, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 27, 2009, and November 10, 2009.  The parties filed a Joint Stipulation on May 5, 2010, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 4, 1955. [Administrative Record ("AR") at 9, 29, 109, 113.] She completed seventh grade and some college, but does not have a high school equivalency degree. [Id. at 29.] She also holds certificates as a certified nursing assistant and in armed guard security. [Id. at 29-30.] Plaintiff has past relevant work experience as a security guard and day care provider. [Id. at 22, 131.]

Plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments on August 21, 2008, alleging that she has been unable to work since August 2, 2008, because of "chronic back and neck problems, pinch [sic] nerve; fibromyalgia; congestive heart failure, chronic bronchitis[.]"  [Id. at 109-12, 113-16, 122; JS at 2.]  After her applications were denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 69-74, 77.]  A hearing was held on June 16, 2009, at which plaintiff appeared with counsel and testified on her own behalf.  [Id. at 26-52.]  A vocational expert also testified at the hearing.  [Id. at 43-50.]

On August 13, 2009, the ALJ determined that plaintiff was not disabled.  [Id. at 7-23.] When the Appeals Council denied plaintiff's request for review of the hearing decision on September 23, 2009, the ALJ's decision became the final decision of the Commissioner.  [Id. at 1-3.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

1   adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

2   1257.  When determining whether substantial evidence exists to support the Commissioner's

3   decision, the Court examines the administrative record as a whole, considering adverse as well

4   as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

5   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

6   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

7   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

8

9                                              IV.

10                                  **EVALUATION OF DISABILITY**

11          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

12   to engage in any substantial gainful activity owing to a physical or mental impairment that is

13   expected to result in death or which has lasted or is expected to last for a continuous period of at

14   least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

15

16   **A.      THE FIVE-STEP EVALUATION PROCESS**

17          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

18   whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

19   828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

20   determine whether the claimant is currently engaged in substantial gainful activity; if so, the

21   claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

22   substantial gainful activity, the second step requires the Commissioner to determine whether the

23   claimant has a "severe" impairment or combination of impairments significantly limiting her ability

24   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

25   If the claimant has a "severe" impairment or combination of impairments, the third step requires

26   the Commissioner to determine whether the impairment or combination of impairments meets or

27   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

28   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

1  If the claimant's impairment or combination of impairments does not meet or equal an impairment
2  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
3  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
4  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform
5  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie
6  case of disability is established.  The Commissioner then bears the burden of establishing that the
7  claimant is not disabled, because she can perform other substantial gainful work available in the
8  national economy.   The determination of this issue comprises the fifth and final step in the
9  sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
10 at 1257.

12 **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

13        At step one, the ALJ determined that plaintiff did not engage in any substantial gainful
14 activity during the period of time between August 2, 2008 (the alleged onset date of disability), and
15 March 31, 2009 (the date the ALJ determined that plaintiff was last insured for Disability Insurance
16 Benefits purposes).  [AR at 20.]  At step two, the ALJ concluded that plaintiff has the severe
17 impairment of low back syndrome.  [Id.]  At step three, the ALJ determined that plaintiff's
18 impairment does not, either individually or in combination, meet or equal any of the impairments
19 listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  [Id.]  The ALJ further found that plaintiff
20 retained the residual functional capacity ("RFC")[1] "to perform the full range of light work"[2] as
21 defined in 20 C.F.R. §§ 404.1567 and 416.967.  [Id.]  At step four, the ALJ concluded that, through
22 the date plaintiff was last insured, she could perform her past relevant work as a security guard
23 and day care provider.  [Id. at 22.]  Accordingly, the ALJ concluded that plaintiff is not disabled.
24 [Id. at 23.]

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567, 416.967.

## V.

### THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly 1) conducted the disability analysis at step two and step three of the sequential analysis; and 2) rejected plaintiff's credibility.  [Joint Stipulation ("JS") at 3-18, 27-33.]  The Court agrees with plaintiff, in part, and remands the case for further proceedings.

### A.   STEP TWO ANALYSIS

Plaintiff contends that the ALJ erred in not finding plaintiff to have fibromyalgia at step two of the sequential analysis.  [Id. at 3.]  Specifically, plaintiff contends that the ALJ improperly rejected the opinions of her two treating physicians, Dr. Nguyen Thong and Dr. Faustino Bernadett.  [Id. at 3-18.]  The Court agrees.

At step two of the sequential analysis, an ALJ must determine whether the plaintiff has a severe, medically determinable impairment or combination of impairments that will significantly limit her physical or mental ability to perform basic work activities.  Smolen v. Chater, 80 F.3d 1273, 1280, 1289-90 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. §§  404.1520, 404.1521).  A medically determinable impairment is one that results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§  404.1508, 416.908.  It "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the plaintiff's] statement of symptoms."  Id. (citation omitted).

Fibromyalgia is a syndrome that "is poorly understood within much of the medical community."  Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted).  Significantly, there is no known cause or cure, and fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms."  Id. at 590; Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.").  Courts have noted that there

1   are no laboratory or diagnostic tests that can confirm the presence of fibromyalgia. <u>Benecke</u>, 379

2   F.3d at 590 (citations omitted); <u>Sarchet</u>, 78 F.3d at 306; <u>Brosnahan v. Barnhart</u>, 336 F.3d 671, 672

3   n.1 (8th Cir. 2003).   Hence, fibromyalgia is often diagnosed by eliminating other possible

4   conditions and confirming the presence of the disease's symptoms: widespread pain existing for

5   at least three months, fatigue, disturbed sleep, stiffness, and tenderness in at least eleven of

6   eighteen specified sites ("trigger points")[4] on the body.   <u>Brosnahan</u>, 336 F.3d at 672 n.1

7   ("[d]iagnosis [of fibromyalgia] is usually made after eliminating other conditions"); <u>Preston v. Sec.</u>

8   <u>of Health and Human Servs.</u>, 854 F.2d 815, 818 (6th Cir. 1988) ("no objective tests . . . can

9   conclusively confirm [fibromyalgia]"); <u>Rollins v. Massanari</u>, 261 F.3d 853, 855 (9th Cir. 2001)

10   (listing fibromyalgia's symptoms (quoting <u>Sarchet</u>, 78 F.3d at 306)).

11        When evaluating medical opinions, the case law and regulations "distinguish among the

12   opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

13   those who examine but do not treat the claimant (examining physicians); and (3) those who neither

14   examine nor treat the claimant (nonexamining physicians)." <u>Lester</u>, 81 F.3d at 830; <u>see</u> 20 C.F.R.

15   §§ 404.1502, 416.902.  "'The administrative law judge is not bound by the uncontroverted opinions

16   of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without

17   presenting clear and convincing reasons for doing so.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 680

18   (9th Cir. 1993) (quoting <u>Montijo v. Sec'y of Health & Human Servs.</u>, 729 F.2d 599, 601 (9th Cir.

19   1984)); <u>see</u> <u>also</u> <u>Lester</u>, 81 F.3d at 830.  However, the ALJ can discredit a physician's opinion if

20   it is conclusory, brief, and unsupported by medical evidence.  <u>Matney v. Sullivan</u>, 981 F.2d 1016,

21   1019 (9th Cir. 1992) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)); <u>see</u> <u>also</u>

22   <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996) (finding the ALJ properly rejected the

23   physician's psychological evaluations "because they were check-off reports that did not contain

24   any explanation of the bases of their conclusions."  (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 501

25   (9th Cir. 1983))).

26

27

_____

28      [4]   Trigger points are also known as "tender points" or "tender spots."

1    Generally, the opinions of treating physicians are given greater weight than those of other

2    physicians, "[b]ecause treating physicians are employed to cure and thus have a greater

3    opportunity to know and observe the patient[.]"  Smolen, 80 F.3d at 1285; see 20 C.F.R. §§

4    404.1527, 416.927.  The ALJ is required to provide an explicit explanation, supported by evidence

5    in the record, of the weight given to plaintiff's treating physician's medical opinions.  20 C.F.R. §§

6    404.1527, 416.927; Lester, 81 F.3d at 830; Social Security Ruling[5] 96-2p.[6]  The treating

7    physician's opinion will be given controlling weight if it is "well-supported by medically acceptable

8    clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

9    evidence in [plaintiff's] case record[.]" 20 C.F.R. §§ 404.1527, 416.927.  Even where the treating

10   physician's opinion on disability is controverted, it can only be rejected with "specific, legitimate

11   reasons . . . that are based on substantial evidence in the record."  Murray, 722 F.2d at 502

12   (citation omitted).  An examining physician's opinion that differs from the treating physician's

13   opinion may constitute substantial evidence if it is based on independent clinical findings which

14   include "diagnoses that differ from those offered by another physician and that are supported by

15   substantial evidence . . . [or] findings based on objective medical tests that the treating physician

16   has not herself considered[.]"  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted).

17   However, if "an examining physician relies on the same clinical findings as a treating physician,

18   but differs only in his or her conclusions, the conclusions of the examining physician are not

19   'substantial evidence.'"  Id. (citation omitted).  Also, "[i]n many cases, a treating source's medical

20   opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

21   test for controlling weight."  Id. at 633 (citing SSR 96-2p).  To properly reject a physician's findings,

22   the ALJ is required to "do more than offer his conclusions.  He must set forth his own

23   ───────────────

24   [5]    Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."

25   Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

26   [6]    "[T]he notice of the determination or decision must contain specific reasons for the weight

27   given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

28   gave to the treating source's medical opinion and the reasons for that weight."

1  interpretations and explain why they, rather than the doctors', are correct." Id. at 632 (citation
2  omitted).

3       Here, at step two of the sequential analysis, the ALJ found plaintiff's only severe impairment
4  to be low back syndrome. [AR at 20.] In reaching this conclusion, the ALJ credited the opinion
5  of examining physician Dr. Joseph T. Culverwell, who diagnosed plaintiff only with "low back
6  syndrome," over that of plaintiff's two treating physicians, Dr. Nguyen Thong and Dr. Faustino
7  Bernadett, both of whom diagnosed plaintiff with fibromyalgia. [Id. at 16, 186, 214, 229.] The ALJ
8  further noted that even if plaintiff had fibromyalgia, it was not severe enough to result in functional
9  limitations. [Id. at 15.]

10       **1.**    **The Medical Evidence**

11       Dr. Thong assessed plaintiff with fibromyalgia on plaintiff's initial visit on June 19, 2008,
12  finding that plaintiff had multiple trigger points. [Id. at 214, 221.] He reported that he saw plaintiff
13  once every 2 to 3 months, and was still treating plaintiff for fibromyalgia and chronic pain
14  syndrome on June 18, 2009.[7] [Id. at 221, 288.] During his treatment of plaintiff, Dr. Thong
15  conducted neurological examinations [id. at 277], physical examinations [id. at 221], and sensory
16  examinations[8] [id. at 279]; ordered tests to rule out other diseases [id. at 213, 218, 277]; and
17  examined plaintiff's medical history. [Id. at 219.] In identifying plaintiff's symptoms, which he
18  found to be "chronic" [id. at 223], Dr. Thong noted in his treatment records that plaintiff had
19  multiple trigger points. [Id. at 214, 219.] In his October 9, 2008, Medical Report, he again found
20  plaintiff to have "multiple joint and tender points[,]" "tenderness in multiple muscle areas," and also
21  found positive results for her straight leg raising test. [Id. at 221-23.] Further symptoms noted on
22  March 6, 2009, indicated multiple tender points, non restorative sleep, chronic fatigue, morning
23  stiffness, muscle weakness, frequent severe headaches, numbness and tingling, breathlessness,

24  _____

25     [7]   A prescription pad statement from Dr. Thong dated June 18, 2009, reads: "Ms. Dillon is currently under my professional care for Fibromyalgia and chronic pain syndrome." [AR at 288.]

26     [8]   Specifically, Dr. Thong's October 23, 2008, sensory examination indicates: "sensation intact
27  to all modalities. [E]xcessive tenderness to palpation of soft tissueswsuboccipital [sic] upper trapezii, sternoid mastoid muscles, lateral epicondyle, buttock, great trochantersupraspinati [sic]."
28  [AR at 281.]

anxiety, and depression.  [Id. at 268.]  He found that plaintiff is only able to walk for ten minutes,[9]

plaintiff's pain limits her reaching, handling or fingering movements, and plaintiff is "unable to lift

or carry any load weighing more than two pounds."  [Id. at 222, 288.]  Dr. Thong prescribed

medication [id. at 279], including those specific for treating plaintiff's fibromyalgia[10] [id. at 162],

gave plaintiff epidural injections [id. at 41], and also informed plaintiff of treatment options, risks,

and potential complications.  [Id. at 277.]  He found plaintiff to be limited to less than sedentary

exertion in a March 2009, RFC questionnaire and reported that plaintiff experienced pain in

various areas of her body.[11]  [Id. at 268-71.]

          Dr. Bernadett began treating plaintiff on July 25, 2006, and diagnosed her with fibromyalgia

on August 26, 2008, two years after he began to treat plaintiff.  [Id. at 126, 186.]  The record

indicates that he was still treating plaintiff as of February 10, 2009.  [Id. at 284.]  Plaintiff described

Dr. Bernadett as her "pain management doctor[,]" whom she saw once a month for a check-up,

medication refills, and treatment of her neck and back.[12]  [Id. at 126.]  In treating plaintiff, Dr.

Bernadett reviewed her medical history,[13] examined her after injections [id. at 208], and assessed

her pain level.  [Id. at 173-211.]  From July 25, 2006 (initial visit) to March 10, 2008, he diagnosed

plaintiff's pain level on a scale of 1-10 as typically between 4-5, and between 7-9 from then on until

October 17, 2008.  [Id.]  His treatment records consistently indicated that he found plaintiff to have

pain, at times severe, in various areas of her body.  [Id.]  Dr. Bernadett found that plaintiff is never

_____

    [9]    Dr. Thong did not indicate whether plaintiff can walk for ten minutes at a time or during the course of an entire day.  [AR at 288.]

    [10]   Plaintiff states in her Exertion Questionnaire that "Dr. Thong had to [prescribe] Neurontin 600 as an alternative for Lyrica.  Medical would not pay for Lyrica.  Dr. Thong said I need the Lyrica for the Fibromyalgia."  [AR at 162.]

    [11]   Dr. Thong found pain in bilateral locations of plaintiff's lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet.  [AR at 269.]

    [12]   Dr. Bernadett's treatment records indicate that he typically saw plaintiff once or twice a month.  [AR at 173-211.]

    [13]   Copies of reports of various procedures were sent to Dr. Bernadett.  [AR at 178-83.]

1    able to twist, stoop, crouch, and climb ladders, and that her reaching, handling, fingering, feeling,

2    and pushing/pulling abilities are limited.  [Id. at 274.]  In support of his opinion of plaintiff's

3    limitations, he cites medical findings such as an MRI finding and a cervical spine compression test.

4    [Id.]  In treating plaintiff, he prescribed pain medications including those specific for treating her

5    fibromyalgia.  [Id. at 173-211.]  On March 10, 2009, he determined that plaintiff was limited to less

6    than sedentary exertion.  [Id. at 273-74.]

7           Dr. Stephen W. Jenkins, an examining physician, diagnosed plaintiff with fibromyalgia after

8    looking at plaintiff's medical history that describes that "[p]ain is everywhere in muscles, joints, low

9    back, neck, shoulders, etc . . . [and is] described as sharp and burning in nature", and finding that

10   she has "tenderness in multiple muscle areas paraspinous areas without edema . . . [and]

11   [m]ultiple trigger points."  [Id. at 215.]

12          **2.      Diagnosis of Fibromyalgia**

13          The ALJ concluded that "the medical records do not establish the diagnostic criteria for

14   fibromyalgia.  All [plaintiff] has is subjective pain complaints and that she sometimes says she has

15   subjective tenderness or 'excessive tenderness[.']  That is not sufficient to establish a diagnosis

16   of fibromyalgia."  [Id. at 15.]

17          The above review of the medical record indicates that plaintiff's treating physicians (Dr.

18   Thong and Dr. Bernadett) specifically diagnosed plaintiff with fibromyalgia, and an examining

19   physician (Dr. Jenkins) assessed plaintiff with "[c]hronic generalized Pain - consistent with

20   fibromyalgia."  [Id. at 186, 215, 221.]  To the extent the ALJ rejected plaintiff's physicians'

21   diagnoses of fibromyalgia because their records did not note the number of trigger points they

22   found before reaching their diagnoses, such a rejection constitutes error.  See, e.g., Cable v.

23   Astrue, 2007 WL 2827798, *6 (E.D. Cal. Sept. 27, 2007) (the ALJ erred in rejecting plaintiff's

24   treating physician's diagnosis of fibromyalgia because he "failed to record a specific number of

25   trigger points").  It is not at all clear -- as the ALJ seems to indicate -- that the physicians found

26   less than eleven trigger points.  Indeed, in noting that plaintiff had "multiple" trigger points, they

27   may have in fact found more than eleven trigger points.  It was the ALJ's duty to further develop

28

10

1   the record if she felt that a specific finding of the number of trigger points was necessary.[14]

2   Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's

3   own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers

4   the ALJ's duty to 'conduct an appropriate inquiry.'"  (citation omitted)); 20 C.F.R §§ 404.1512,

5   416.912 ("We will seek additional evidence or clarification from your medical source when the

6   report from your medical source contains a conflict or ambiguity that must be resolved[.]").  Since

7   the ALJ failed to explain how the physicians' failure to explicitly state the number of plaintiff's

8   trigger points reflected that plaintiff had less than eleven such points, the Court finds that rejecting

9   plaintiff's physicians' diagnoses of fibromyalgia on that basis, without more, constitutes error.

10      The Court also finds that the ALJ's claim that the only evidence for plaintiff's fibromyalgia

11   is her subjective pain complaints and tenderness reveals a misconception of this unique disease.

12   Pain is a distinguishing symptom of fibromyalgia, and plaintiff's pain has been extensively

13   documented by plaintiff's treating physicians (Dr. Thong and Dr. Bernadette) in the medical record.

14   [AR at 173-211, 212-24, 267-71, 272-75, 283-84.]  Benecke, 379 F.3d at 590 (Fibromyalgia is

15   "diagnosed entirely on the basis of patients' reports of pain and other symptoms.").  Specifically,

16   Dr. Thong's June 19, 2008, treatment record indicated plaintiff had multiple trigger points, a

17   October 9, 2008, Medical Report indicated that plaintiff had "tenderness in multiple muscle areas,"

18   and other records noted that plaintiff suffered from fatigue. [AR at 219, 222, 268.] Dr. Bernadett's

19   treatment records also consistently documented plaintiff's body pain, and he in fact prescribed

20   plaintiff with pain medications including those specific for treating plaintiff's fibromyalgia.  [Id. at

21   173-211]; see Rollins, 261 F.3d at 855.  The ALJ essentially rejected the opinions of Dr. Thong

22   and Dr. Bernadett because they failed to provide any objective evidence to support their opinions.

23   [AR at 16.]  Given that the symptoms associated with fibromyalgia are subjective and there are

24   no laboratory tests to confirm fibromyalgia's presence or severity, the ALJ's rejection of the

25   treating physicians' opinions on this ground was improper.  See, e.g., Guevara v. Astrue, 2009 WL

26   _____

27      [14]   See Rollins, 261 F.3d at 855 ("the rule of thumb is that the patient must have at least 11
     [tender spots] to be diagnosed as having fibromyalgia[] that when pressed firmly cause the patient
28   to flinch" (citation omitted)).

650736, *6 (C.D. Cal. March 11, 2009) ("[D]ue to the nature of fibromyalgia, the absence of 'laboratory or clinical findings,' also cited by the ALJ in support of his rejection of [plaintiff's treating physician's opinion], is not a legitimate basis for rejecting the treating physicians' diagnosis of fibromyalgia." (citing Sarchet, 78 F.3d at 206)); see Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996) ("Pain, fatigue, and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition."). Because plaintiff's treatment records extensively document her pain symptoms, trigger points, and fatigue -- the distinguishing symptoms of fibromyalgia (see Rollins, 261 F.3d at 855 (fibromyalgia symptoms include multiple trigger points, fatigue, and pain)) -- it was improper for the ALJ to reject Dr. Thong's and Dr. Bernadett's opinions on the basis that they relied on plaintiff's subjective complaints in forming their opinions.[15]

### 3.    Severity of Plaintiff's Fibromyalgia

Plaintiff further contends that her fibromyalgia was severe enough to limit her ability to work and that the ALJ improperly rejected the limitations assessed by Dr. Thong and Dr. Bernadett. [JS at 3.] Both treating physicians determined that plaintiff was limited to less than sedentary exertion. [AR at 268-71, 273-74.] The ALJ rejected this RFC finding.

At step two of the sequential analysis, the ALJ must determine whether plaintiff's impairment or combination of impairments is sufficiently severe enough to limit her "physical or mental ability to do basic work activities[.]"[16] 20 C.F.R. §§ 404.1520, 416.920. She must also "consider [plaintiff's] subjective symptoms, such as pain or fatigue, in determining severity." Smolen, 80 F.3d at 1290 (citation omitted). Typically, "the step two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citation omitted); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a "de minimus threshold") (citation

---

[15] The Court notes that the ALJ's adoption of the functional capacity assessment set forth by Dr. Culverwell, an examining physician, without proper rejection of plaintiff's treating physicians' findings, is insufficient. See Murray, 722 F.2d at 502 (the ALJ needs to provide specific, legitimate reasons for rejecting a treating physician's opinion (citation omitted)).

[16] "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" Smolen, 80 F.3d at 1290 (citation omitted).

1   omitted).  Only impairments that have "'no more than a minimal effect on an individual[']s ability

2   to work'" can be found "not severe."  Smolen, 80 F.3d at 1290 (quoting SSR 85-28; Yuckert v.

3   Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).

4           The ALJ reasoned that since plaintiff alleges pain from fibromyalgia, "her condition, if it is

5   severe, should result in objective functional restrictions, as would any other medical condition that

6   causes pain. . . . [but] the medical records . . . do not show any severe functional limitations

7   secondary to pain." [AR at 15.]  In forming her conclusion, the ALJ rejected the limitations found

8   by treating physicians Dr. Thong and Dr. Bernadett for the following reasons: 1) the alleged

9   limitations are unsupported "by the medical findings or test results as documented in their

10  treatment notes or in the consultative examination reports;" 2) greater weight is given "to the signs,

11  test results, and medical findings noted and contained in the longitudinal treating records, and

12  those reported by the consultative examiners, than . . . to a check off disability form or disability

13  statement that was completed by Dr. Bernadett[] or Dr. Thong for the sole purpose of qualifying

14  the claimant for benefits;" 3) the "assertions in the [check-off disability] forms and/or statements

15  are not supported by, and are inconsistent with, the information contained in [the] doctor's

16  treatment notes and in the other medical records;" 4) no weight should be given to an assessment

17  of Dr. Thong and Dr. Bernadett because they relied "solely on the claimant's subjective complaints

18  and self-assessed functional limitations . . . [when] the claimant's complaints and statements are

19  not credible;" 5) the conservative treatment prescribed by Dr. Thong and Dr. Bernadett is

20  inconsistent with their functionality assessments; and 6) the examining physician's opinion of

21  plaintiff's RFC should be accepted.  [Id. at 16.]

22          Although an ALJ may reject a treating physician's opinions that is conclusory and

23  unsupported by clinical findings (see Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)), such

24  is not the case here.  In fact, Dr. Bernadett specifically wrote that plaintiff's limitations were

25  supported by objective medical findings such as MRI results. [AR at 274.]  Dr. Thong also noted

26

27

28

1   positive straight leg findings in supporting his diagnosis.[17]  [Id. at 268.]  The fact that both doctors

2   also conducted various examinations throughout their treatment of plaintiff further supports that

3   they diagnosed plaintiff's limitations not solely on plaintiff's "subjective complaints and self-

4   assessed functional limitations."  [Id. at 16, 173-211, 212-24.]  Because the ALJ appears to have

5   ignored evidence showing that Dr. Thong's and Dr. Bernadett's findings were based on objective

6   medical findings, the Court concludes that the ALJ improperly rejected the limitations found by

7   these physicians as being unsupported by medical findings.  See Day v. Weinberger, 522 F.2d

8   1154, 1156 (9th Cir. 1975) (an ALJ must look at the record as a whole and not merely at findings

9   that support a nondisability determination.)

10       The ALJ also concluded that the assertions of Dr. Thong and Dr. Bernadett "are not

11   supported by, and are inconsistent with, the information contained in [the] doctor's treatment notes

12   and in the other medical records."  [AR at 16.]  However, in the decision, the ALJ failed to explain

13   her interpretation of the medical evidence and detail her reasoning behind this finding.  [Id. at 4-

14   23.] As such, the ALJ has not met the requisite standard to support her finding.  See McAllister

15   v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ cannot reject a treating

16   physician's opinion by giving reasons that were "broad and vague, failing to specify why [she] felt

17   the treating physician's opinion was flawed" (citation omitted)); Reddick v. Chater, 157 F.3d 715,

18   725 (9th Cir. 1998) (an ALJ can reject treating physicians' opinions found inconsistent with other

19   medical evidence by "setting out a detailed and thorough summary of the facts and conflicting

20   clinical evidence, stating [her] interpretation thereof, and making findings" (citation omitted)).

21       The ALJ further found that the conservative treatment prescribed by the treating physicians

22   was inconsistent with the limitations they found.  [AR at 17.]  This reason is insufficient for rejecting

23   the treating physicians' opinions because Dr. Thong and Dr. Bernadett provided plaintiff with

24   medication, a widely-accepted treatment for fibromyalgia, and the ALJ does not indicate what sort

25   of treatment was available to plaintiff that her treating physicians did not prescribe.  See, e.g.,

26   ―――――――――――

27     [17]   When Dr. Thong was asked to "[i]dentify the clinical findings, laboratory and test results that

28   show your patient's medical impairments[,]" he indicated that plaintiff suffers from "chronic generalized pain refractory to various analgesics."  [AR at 268.]

1   Lapeirre-Gutt v. Astrue, 2010 WL 2317918, *1 (9th Cir. June 9, 2010) ("A claimant cannot be

2   discredited for failing to pursue non-conservative treatment options where none exist.") (citable

3   for its persuasive value pursuant to Ninth Circuit Rule 36-3); Cronin v. Astrue, 2010 WL 702033,

4   *3 (C.D. Cal. Feb. 25, 2010) ("The ALJ characterized Plaintiff's treatment with [her physician] as

5   'conservative,' because Plaintiff only received medication management from [the physician].

6   However, the ALJ failed to articulate what other treatment was available for [f]ibromyalgia.").

7          The ALJ also rejected the limitations found by the treating physicians in the "check-off"

8   disability forms or statements because they were completed "for the sole purpose of qualifying the

9   claimant for benefits[.]" [AR at 16.]  Since the ALJ did not point to any evidence of impropriety on

10  the parts of Dr. Thong and Dr. Bernadett, this is an invalid reason for rejecting the doctors'

11  opinions.  See Lester, 81 F.3d at 832 ("'The Secretary may not assume that doctors routinely lie

12  in order to help their patients collect disability benefits.'" (citation omitted)).

13         Finally, the ALJ states that since "[t]he treatment records and the consultative examination

14  show no significant functional limitations from the mild disc disease of the spine and fibromyalgia[,]

15  . . . I accept and adopt the residual functional capacity from the consultative examiner[.]" [AR at

16  16.]  The ALJ cannot properly reject a treating physician's opinion by merely referencing the

17  contrary findings of another physician.  See Murray, 722 F.2d at 502.  Here, the ALJ failed to

18  provide legally sufficient reasons supported by substantial evidence in the record for rejecting the

19  limitations found by Dr. Thong[18] and Dr. Bernadett.  Her failure to properly reject the limitations

20  assessed by plaintiff's treating physicians undercuts her reliance on the examining physician's

21  _____

22       [18]   The Court notes that defendant further cites the following reasons for rejecting Dr. Thong's
    opinion: 1) it was too extreme; and 2) "Dr. Thong's statement that Plaintiff had fibromyalgia
23  symptoms since 2006 was inconsistent with the fact that Dr. Thong began treating her in 2008."
    [JS at 19, citing AR at 11, 221.]  The Court cannot credit this argument because it is constrained
24  to review the reasons the ALJ actually asserts in her decision to reject the opinion, not the reasons
    that defendant later gives.  Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2
25  (C.D. Cal. 1996) ("If the decision on its face does not adequately explain how a conclusion was
    reached, that alone is grounds for remand." (citation omitted)); see Connett v. Barnhart, 340 F.3d
26  871, 874 (9th Cir. 2003) (citation omitted).  In any event, there is nothing inconsistent with plaintiff
    having had symptoms for two years prior to first seeing Dr. Thong, and then reporting to him the
27  time when the symptoms first appeared.

28

1    opinions, and thus her determination of plaintiff's RFC.  See McAllister, 888 F.2d at 602 ("Where,

2    as in this case, the treating physician's opinion is contradicted by that of another doctor and the

3    ALJ wishes to disregard the opinion of the treating physician, the ALJ must set forth 'specific,

4    legitimate reasons for doing so that are based on substantial evidence in the record.'" (citing

5    Murray, 722 F.2d at 502)).  Remand is warranted to consider plaintiff's impairments and limitations

6    in light of the opinions of Dr. Thong and Dr. Bernadett.[19]

7

8    **B.   PLAINTIFF'S CREDIBILITY**

9          Plaintiff contends that the ALJ improperly rejected her testimony about her pain and

10   limitations.  [JS at 3, 27.]  The Court disagrees.

11         The ALJ must make explicit credibility findings whenever she discredits plaintiff's testimony.

12   See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  The ALJ can only reject a claimant's

13   testimony "upon (1) finding evidence of malingering, or (2) expressing clear and convincing

14   reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); 20 C.F.R. §§

15   404.1529, 416.929.  Once plaintiff has proven an underlying medical impairment, her testimony

16   cannot be rejected "solely because the available objective medical evidence does not substantiate

17   [her] statements."  20 C.F.R. §§ 404.1529, 416.929; Reddick, 157 F.3d at 722; Smolen, 80 F.3d

18   at 1282.  Factors that weigh in determining plaintiff's credibility include plaintiff's daily activities,

19   reputation for truthfulness, work record, and treatment or medication for relieving symptoms.

20   Thomas, 278 F.3d at 958-59; 20 C.F.R. §§ 404.1529, 416.929.   Other factors include

21   inconsistencies in plaintiff's testimony itself, inconsistencies between plaintiff's testimony and

22   conduct, and testimony from physicians or third parties concerning the nature, severity, and effect

23   of the symptoms of which the claimant complains.  Id.  If the ALJ's credibility determination is

24   properly supported, it is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532

25   (9th Cir. 1986).

26

27         [19]   Because the result of this determination may impact the ALJ's assessment of plaintiff's

28   disability at step three of the sequential analysis, that issue will not be addressed herein.

1   Since the ALJ made no finding that plaintiff was malingering, she was required to justify her

2   credibility determination with "clear and convincing reasons[.]"  See Benton, 331 F.3d at 1040; see

3   also Reddick, 157 F.3d at 722 ("'General findings are insufficient; rather, the ALJ must identify

4   what testimony is not credible and what evidence undermines the claimant's complaints.'" (citation

5   omitted)).   Here, the ALJ found plaintiff to be incredible because: 1) plaintiff's "subjective

6   complaints and alleged limitations are out of proportion to the objective clinical findings and

7   observed function restrictions;" 2) plaintiff's subjective complaints and alleged limitations are

8   inconsistent with her conservative treatment; 3) plaintiff's "allegation of extreme medication side

9   effects . . . is not documented in the record;" 4) plaintiff's allegations of her limitations are

10  inconsistent with her daily activities; and 5) plaintiff's testimony itself is inconsistent.  [AR at 17-18.]

11   As discussed below, the Court finds that the ALJ properly cited certain reasons --

12  incompatibility of the medical evidence with plaintiff's alleged inactivity and inability to function,

13  inconsistencies between plaintiff's testimony and her daily activities, and inconsistences within

14  plaintiff's testimony -- to reject plaintiff's credibility.

15   First, the ALJ determined that plaintiff's alleged inactivity and inability to function was not

16  supported by the objective medical evidence, reasoning that the lack of severe disuse muscle

17  atrophy weighs against plaintiff's testimony that she has been nearly bedbound for approximately

18  20 hours per day for the past ten years.[20]  [Id. at 9, 17.]  While the ALJ may not reject plaintiff's

19  credibility solely on the basis of lack of corroborating medical evidence, she can properly consider

20  that factor as a basis for finding plaintiff incredible.  See Rollins, 261 F.3d at 857 (the ALJ can

21  consider a lack of corroborating medical evidence as a factor for finding plaintiff incredible)

22  (citation omitted).  As explained herein, the ALJ provided additional valid reasons for finding

23  plaintiff incredible.  Accordingly, the lack of objective medical evidence showing muscle atrophy

24  was a valid basis for rejecting plaintiff's credibility.  See, e.g., Mitchell v. Astrue, 2010 WL

25  1486475, *4 (C.D. Cal. March 3, 2010) (the ALJ properly considered the lack of "'evidence of

26  severe disuse muscle atrophy that would be compatible with [plaintiff's] alleged inactivity and

27  ───────────────

28  [20]   The Court has reviewed the record and finds that both Dr. Culverwell and Dr. Thong concluded that plaintiff does not have severe disuse muscle atrophy.  [AR at 228, 279.]

1    inability to function'" as a factor "in finding [plaintiff's] subjective symptoms incredible." (citation

2    omitted) (Report and Recommendation adopted, 2010 WL 1462564 (C.D. Cal. April 8, 2010))).

3       The ALJ also found that plaintiff's allegations of her limitations are inconsistent with her

4    daily activities. [AR at 17.] She properly referenced plaintiff's testimony of her limitations -- i.e.,

5    she cannot stand for more than about five minutes, she can only walk a few minutes, and she has

6    been out of bed at most 3 to 4 hours a day since 1999 -- as being inconsistent with her having

7    been able to rear her grandchildren all their lives. [Id. at 9, 17, 31-33.] See Thomas, 278 F.3d at

8    958-59 (inconsistencies between daily activities and testimony is a factor for rejecting credibility).

9    The Court finds that the ALJ's interpretation of plaintiff's testimony is reasonable and supported

10   by the record; therefore, the Court will not second-guess that interpretation. See Rollins, 261 F.3d

11   at 857 (upholding the ALJ's credibility determination even though plaintiff's "testimony [of her

12   activities] was somewhat equivocal about how regularly she was able to keep up with all of these

13   activities, and the ALJ's interpretation of her testimony may not be the only reasonable one"

14   (citation omitted)); see Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) ("Credibility

15   determinations are the province of the ALJ" (citation omitted), and where the ALJ's "findings are

16   supported by substantial evidence in the record, [the Court's] role is not to second-guess that

17   decision.").

18       Finally, as an additional reason for rejecting plaintiff's credibility, the ALJ pointed to

19   plaintiff's statement that her condition has not really changed since she testified before Judge

20   Hatfield[21] in May 2008, then contrasted that testimony with her additional statement that her

21   physical limitations have gotten worse. [AR at 9, 31.] The Court finds this inconsistency to be a

22   valid reason for rejecting plaintiff's credibility. See Thomas, 278 F.3d at 958-59 (inconsistencies

23   in plaintiff's testimony weigh against her credibility).

24       As the ALJ gave clear and convincing reasons supported by the evidence for her

25   conclusion rejecting plaintiff's credibility, remand is not warranted on this issue.

26

27      [21]   In connection with a prior application for benefits, plaintiff testified before Judge Hatfield on

28   May 6, 2008. [AR at 61.]

**VI.**

**CONCLUSION**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reconsider the treating physicians' opinions, and the impact of those opinions on the sequential analysis.  The ALJ is instructed to take whatever further action that is deemed appropriate and consistent with this decision.

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.[22]

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 19, 2010

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[22]   In the Joint Stipulation, plaintiff requests costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C.A.  § 2412(d) ("EAJA").  [JS at 36.]  Plaintiff's request is denied without prejudice.  See Case Management Order, at ¶ XI(A).